UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAIR HOUSING JUSTICE CENTER, INC., WESTCHESTER RESIDENTIAL OPPORTUNITIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> TOWN OF BEDFORD, BLUE MOUNTAIN HOUSING DEVELOPMENT CORP., <br><br> Defendants. | No. _____ <br><br> **COMPLAINT** |

Plaintiffs Fair Housing Justice Center, Inc. ("FHJC") and Westchester Residential Opportunities, Inc. ("WRO"), by their attorneys, Emery Celli Brinckerhoff & Abady, LLP, for their Complaint against Defendants Town of Bedford and Blue Mountain Housing Development Corp. allege as follows:

**INTRODUCTION**

1. The Town of Bedford, and its housing agency the Blue Mountain Housing Development Corp., are using residency and employment preferences that favor white applicants over African American applicants in administering the Town's "middle-income" affordable housing. Bedford's preference system makes it more likely that white applicants will receive the Town's "middle-income" housing units and subjects African American applicants to longer waiting periods for such housing.

2. Bedford's population is overwhelmingly white. According to the 2010 census, the Town's population was 86% white and only 5% African American.

3. Yet, in 2005, the Town amended its zoning code to include so-called

1

"preferences" for the distribution of its "middle-income" affordable housing units that prioritize people who already live or work in Bedford—people who are statistically far more likely to be white than the typical Westchester County resident applying for affordable housing. These "preferences" have had a disparate impact on the number of African American applicants who are awarded middle-income housing in Bedford and have subjected African American applicants to longer waiting periods for such housing (if they ever receive it).

4.  This is a civil rights lawsuit brought under the Fair Housing Act to enjoin Defendants from continuing to use these residency and employment preferences in the rental and sale of middle-income housing units in Bedford.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 3613.

6.  The acts complained of occurred in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

**Plaintiff Fair Housing Justice Center, Inc.**

7.  Plaintiff Fair Housing Justice Center, Inc. is a private non-profit organization dedicated to ensuring that all people have equal access to housing opportunities in the greater New York City region by eliminating housing discrimination and creating open, accessible, and inclusive communities. It is organized under the laws of New York and operates within the Southern and Eastern Districts of New York, including Westchester County.

8. Among other things, FHJC (a) provides information to the public and other non-profit organizations in the New York City regional area about fair housing laws; (b) provides intake counseling to individuals and organizations with allegations of housing discrimination; (c) conducts testing and other investigations of allegations of housing discrimination; (d) makes legal referrals to cooperating attorneys; (e) assists with the preparation and filing of administrative housing discrimination complaints; and (f) provides post-referral litigation support services.  FHJC provides these services free of charge and without regard to income.

9. FHJC also recruits, trains, and utilizes individuals as "testers," persons who pose as renters or homebuyers for the purpose of obtaining information about the conduct of local governments, landlords, real estate companies, agents, and others to determine whether illegal housing discrimination is taking place.

10. FHJC conducts testing investigations for government law enforcement agencies, provides technical assistance to non-profit organizations engaging in fair housing enforcement activities, and engages in policy initiatives that further FHJC's mission, including the publication and dissemination of reports and educational materials.

11. Here, FHJC diverted resources by conducting multiple tests (in person and by phone) with the Town of Bedford and various volunteer fire departments within the Town; FHJC also spent time gathering, reviewing, and analyzing publicly-available data concerning the Town's zoning code, affordable housing program, and racial demographics, and conferring with WRO to discuss the results of their work and coordinate their research and investigation going forward.

**Plaintiff Westchester Residential Opportunities**

12. Plaintiff Westchester Residential Opportunities is a private non-profit organization serving Westchester County and adjacent counties. WRO is organized under the laws of New York, with its principal place of business in White Plains in the Southern District of New York.

13. WRO's mission is to promote equal, affordable, and accessible housing opportunities for all residents in the region in which it operates, including in the Southern District of New York.

14. One of WRO's primary objectives is to promote the expansion of non-discriminatory housing opportunities in Westchester County. It accomplishes this objective through a variety of means, including by providing education about fair housing rights and responsibilities, conducting investigations of allegations of housing discrimination, and undertaking studies and issuing reports about fair housing. WRO also administers a First Time Homebuyers Program that offers home-buying education and helps interested buyers obtain down payment assistance and mortgage advice.

15. WRO operates a Senior Housing Assistance Program which helps locate affordable housing for seniors by, among other things, assisting seniors to find and apply for affordable housing and related programs that help pay for such housing

16. Here, WRO diverted resources by conducting research regarding zoning codes in Westchester, including the Town of Bedford and the Town's preferences, their enforcement, and the properties to which the preferences applied; researching Bedford school districts and other Town services; designing and executing a test and site visits; attending a housing board meeting; and conferring with FHJC to discuss the results of

4

their work and coordinate their research and investigation going forward.

**Defendant Town of Bedford**

17.  Defendant Town of Bedford is a municipal corporation organized under the laws of the State of New York, with its principal offices at 321 Bedford Road, Bedford Hills, New York.  The Town is located in northeastern Westchester County within the Southern District of New York.  The Town includes the hamlets of Bedford Hills, Bedford, and Katonah.

18.  The Town is governed by a Supervisor and a Town Board, which have the authority to enact and enforce the Town's zoning code.

19.  The Town has a Housing Agency which, together with Defendant Blue Mountain Development Corporation, is responsible for administering the Town's affordable housing program, including its "middle-income" housing.

20.  All references to Defendant Town include any individual acting on behalf of, or under the authority derived from, the Town.

**Defendant Blue Mountain Housing Development Corporation, Inc.**

21.  Defendant Blue Mountain Housing Development Corporation, Inc. was created by the Town Board in 1980.

22.  On information and belief, Blue Mountain is a non-profit corporation; however it does not appear to maintain an active listing with either the New York State Department of State or the New York Charities Bureau.

23.  Blue Mountain's website is a part of the Town's website and lists the same principal place of business as the Town, 321 Bedford Road, Bedford Hills, New York.

24. Blue Mountain is governed by a ten-person Board, which is appointed by the Town Board.

25. Blue Mountain develops and renovates affordable housing in the Town and, together with the Town Housing Agency, administers the Town's affordable housing program, including the Town's "middle-income" housing units.

26. All references to Defendant Blue Mountain include any individual acting on behalf of, or under the authority derived from, Blue Mountain.

## FACTUAL ALLEGATIONS

### The Town's Preference System for "Middle-Income" Affordable Housing

27. The Town's zoning code provides that "middle-income dwelling units" are units available for sale or rental to "middle-income families," which are families "whose aggregate income . . . does not exceed the average of the median annual Town-paid wages of full-time employees of the Town . . ." Town Zoning Code, §§ 125-3 & 125-56.

28. According to the Town's Application for Affordable Housing (available on Defendants' website),[1] the income limits for a "middle income family" are currently: $84,877 (1 person); $93,365 (2 person family); $110,340 (3 person family); $118,828 (4 person family); $135,803 (5 person family); $144,291 (6 person family).

29. The Town's zoning code further provides that "[a]t least 20% of the dwelling units constructed in the DH [Diversified Housing] District shall be middle-income dwelling units." Town Zoning Code, § 125-29.2.

---

[1] *Available at* http://www.bedfordny.gov/wp-content/uploads/2013/12/Housing-Application-Prt-1.pdf (last visited July 19, 2017).

30. In 2005, the Town amended its zoning code to provide for a preference system in the allocation of so-called "middle-income dwelling units." *See* L.L. No. 12-2005.

31. The Town's zoning code currently provides that:

> Middle-income families applying for middle-income dwelling units shall be selected on the basis of the following categories of priority:
>
> 1) Full-time Town of Bedford municipal employees and active members of the Bedford Fire Department, Katonah Fire Department, the Bedford Hills Fire Department and the Katonah Bedford Hills Volunteer Ambulance Corps.
>
> 2) Employees of schools within the Town of Bedford that provide any or all of kindergarten through twelfth-grade education.
>
> 3) Residents of the Town of Bedford.
>
> 4) Other persons employed in the Town of Bedford.
>
> 5) Parents and children of residents of the Town of Bedford.
>
> 6) Other residents of Westchester County.
>
> 7) Other persons employed in Westchester County.
>
> 8) All others.

Zoning Code, §125-56(E).

32. According to Blue Mountain's 2015 Annual Report (the most recent report publicly available), the Town has 16 middle-income units, which are awarded according to the preference system set forth above. *See* 2015 Annual Report at 4-6.

33. In addition, the Town has 7 units "reserve[d]" for "Bedford residents" at the Woodcrest Senior Condos. *See* 2015 Annual Report at 5.

34. More recently, in response to Westchester County's obligations under the consent decree in *United States et al v. Westchester County*, No. 06 Civ. 2860 (DLC) (S.D.N.Y.), the Town has also added "affordable affirmatively furthering fair housing" ("AAFFH") units, which are for households whose aggregate income does not exceed 80% of Westchester County's area median income ("AMI") and which are marketed in accordance with the Westchester County Fair and Affordable Housing Affirmative Marketing Plan. *See* Zoning Code, § 125-3; 2015 Annual Report at 4-6.

35. Westchester County does not have a county-wide zoning code. Each town within the County has its own zoning code and other towns that are of similar size to Bedford have their own affordable housing programs included within their zoning codes.

**The Town's Preferences Favor White Applicants Over African American Applicants**

36. The Town's preference system for the allocation of middle-income housing favors white households by making it more likely that the recipients of middle-income housing units will be white and by subjecting African American applicants to longer waiting periods for such units.

37. The Town's population is predominantly white. As of the 2010 Census, the Town's population was 17,335. That Census shows that the Town's population was approximately 86% white and only 5% African American, whereas the County's population of 949,113 was 68% white and almost 15% African American.

38. On information and belief, the small percentage of the Town's population that is African American is artificially inflated by the Bedford Hills Correctional Facility, which houses approximately 409 African American inmates (*i.e.* approximately 49% of the facility's total inmate population). Clearly, none of these inmates is eligible for

8

affordable housing in the Town.

***Bedford Resident Preference Favors White People***

39. The third residency preference is for residents of the Town of Bedford.

40. This third preference favors white people because the overwhelming majority of the Town's residents (86%) are white and only 5% are African American.

41. According to the 2010 Census, 76% to 78% of the Town's households that are income-eligible for "middle-income" housing (per the Zoning Code's income eligibility limits) are white.

42. According to the 2010 Census, only 2 to 3% of the Town households that are income-eligible for "middle-income" housing are African-American.

43. By contrast, according to the 2010 Census, 18% of the Westchester County households that are are income-eligible for Bedford "middle-income" housing are African American.

***The First Preference for Town Employees and Firefighters Also Favors Whites***

44. The first preference (for Town employees and volunteer firefighters) and the second preference (for school employees in the Town) also favor white applicants over African American applicants.

45. On information and belief, the majority of the members of the three listed volunteer fire departments and one listed volunteer ambulance corps are residents of the Town of Bedford which, as set forth above, is majority white.

46. The Bedford Fire Department requires residency within the Bedford Fire District in order to qualify for membership.

47. According to calls conducted by testers employed by FHJC, the Katonah Fire Department, the Bedford Hills Fire Department, and the Katonah Bedford Hills Volunteer Ambulance Corps all have a preference for residents as members and all require that their members live or work close enough to respond quickly in the event of a fire.

48. On information and belief, less than 20% of the people eligible for the first preference are Town employees and a still smaller subset of these employees are full-time employees (as required by the preference) and a still smaller subset of those full-time employees are income-eligible for "middle-income" housing and therefore eligible for the first preference.

49. The first preference also excludes the employees of the Bedford Hills Correctional Facility, a majority of whom are, on information and belief, African American. These employees are relegated to the fourth preference and therefore treated less favorably than the Town employees who, on information and belief, are majority white.

*The Second Preference for Bedford School Employees Also Favors Whites*

50. On information and belief, the majority of the employees of schools within the Town are also white.

51. According to data obtained by FHJC, only 1.4% of the professional staff of the public schools in Bedford was African American as of fall 2016.

52. According to United States Department of Labor data obtained by Plaintiffs, the average salary of the non-professional employees (e.g. cafeteria workers, custodians, grounds keepers) is too low to feasibly allow them to afford the Town's

"middle-income" units.

53. No racial demographic data is available for the private schools in Bedford, but, on information and belief, the number of private school employees is smaller and there is no reason to believe the private schools' workforce is any more or less racially diverse than the public schools' workforce.

**Defendants Discourage Non-Residents from Applying**

54. On information and belief, Defendants apply this preference system by placing applicants for the "middle-income" housing on waitlists and selecting applicants off the waitlists based on their eligibility for one of these preferences.

55. The Town's housing application (available online and distributed to FHJC testers) misleads nonresidents about the preferences by describing the preferences as "eligibility requirements," rather than preferences.

56. The application also does not explain that the preferences only apply to middle-income housing, not to the County-wide AAFFH affordable housing which is marketed under the Westchester County guidelines which do not have residency or employment preferences.

57. On information and belief, suggesting in the application that the preferences are requirements for all affordable housing in the Town (including middle-income and affordable housing) discourages people who do not qualify for a preference from applying to either program and further perpetuates the discriminatory effects of the preference system.

58. Town employees and officers have also stated to prospective applicants that the Town actually maintains separate wait lists for residents and non-residents.

59. For example, in a visit to the Town of Bedford office on March 13, 2017, Amy Pectol (the Town Tax Receiver and a Blue Mountain Board Member) told an African American FHJC tester that an applicant got priority if he was already a Town resident, had a parent or child in the Town, was a volunteer with the fire department or ambulance corps, or was employed with the Town.  She also said that the Town maintained two lists for affordable housing, one for residents and one for non-residents and that he would be sort of "in the middle" if he worked in Bedford but did not live there—this despite the fact that the tester told her he was about to accept employment as a Bedford school teacher, which should have made him eligible for the second preference.  She also told the tester that the wait list could take several years.

60. In another visit to the Town of Bedford office on December 10, 2015, the Town Supervisor's assistant told a white FHJC tester that the waitlist was long (two to ten years).  She stated that Town residents went on the "primary list," while non-residents were placed on the "secondary list."  She did not explain that the preferences were only for the "middle-income" housing, not for the County-wide AAFFH affordable housing.

61. The same tester also met with Town Tax Receiver and Blue Mountain Board Member Ms. Pectol on April 28, 2016 and she confirmed that the Town was still using the preferences to award its middle-income housing units.

62. On information and belief, Defendants' "preferences policy" for "middle-income" housing has had a disparate impact on African American people who would otherwise have been income-eligible for such housing but who were not awarded such housing because of the preference system or who were subjected to a longer waiting time to receive such housing than white applicants.  As a direct result of Defendants'

preference system, the Town's middle-income housing is disproportionately occupied by white households and African American applicants have either had to wait longer to receive such housing than white applicants or have not received such housing at all.

63.     On information and belief, administering the Town's middle-income housing without a preference system would have less disparate impact on African American applicants, including by making it more likely they would have received such housing and by reducing the time they would have had to wait to receive such housing.

**Defendants' Disregard of the Impact of Their Policies**

64.     On information and belief, prior to adopting the amendment to the Town's zoning code described above, Defendants did not evaluate whether their preference system would have an adverse impact based on race.

65.     On information and belief, Defendants have never evaluated whether their preference system for middle income housing units favors white applicants and disfavors African American applicants.

**Town's Discriminatory Policies Have Injured Plaintiffs**

66.     By reason of Defendants' conduct as described above, FHJC has suffered injury in the form of diversion of its resources.  FHJC has expended staff time and funds to investigate and respond to Defendants' discriminatory policies and practices which diverted resources away from FHJC's other activities.  As part of its investigative efforts, FHJC expended staff time and resources to conduct and review testing; to obtain and review public documents regarding the Town's zoning code; to analyze Census, employment, school, prison, and other available data; and to confer with WRO to discuss the results of their work and coordinate their investigation going forward.

67. Furthermore, Defendants' discriminatory policies and practices as described above have frustrated FHJC's mission to ensure that all people have equal access to housing opportunities; foster open, accessible and inclusive communities; and eliminate housing discrimination throughout the New York City region, including in Westchester County, by making housing unavailable and imposing discriminatory terms and conditions because of race in the Town of Bedford and Westchester County.

68. By reason of Defendants' conduct as described above, WRO has suffered injury in the form of diversion of its resources. WRO has expended staff time and funds to investigate and respond to Defendants' discriminatory policies and practices which diverted resources away from WRO's other activities. As part of its investigative efforts, WRO expended staff time and resources to: conduct and review testing; conduct research regarding Westchester County zoning codes, including the Town of Bedford and the Town's preferences, their enforcement, and the properties to which the preferences applied; research school districts and other town services; design and execute site visits; attend a housing board meeting; and confer with FHJC to discuss the results of their work and coordinate their investigation going forward.

69. In addition to causing a diversion of WRO's resources, Defendants' conduct as described above has frustrated WRO's stated mission to promote equal, affordable, and accessible housing opportunities for all residents of the region in which it operates, by making housing unavailable and imposing discriminatory terms and conditions because of race in the Town of Bedford and Westchester County, including reducing the availability of affordable housing options for WRO's clients in its Senior Housing Assistance Program.

**FIRST CAUSE OF ACTION**
(Fair Housing Act, 42 U.S.C. § 3604(a))

70. Plaintiffs repeat and re-allege the foregoing paragraphs of their complaint as though fully set forth herein.

71. Defendants' conduct as described above makes dwellings unavailable because of race in violation of the Fair Housing Act, 42 U.S.C. § 3604(a).

72. Plaintiffs are aggrieved persons as defined by 42 U.S.C. § 3602(i). Plaintiffs have been injured by Defendants' discriminatory conduct, and have suffered damages as a result.

73. Accordingly, under 42 U.S.C. § 3613(c), Plaintiffs are entitled to actual damages, injunctive relief, and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
(Fair Housing Act, 42 U.S.C. § 3604(b))

74. Plaintiffs repeat and re-allege the foregoing paragraphs of their Complaint as though fully set forth herein.

75. Defendants' conduct as described above discriminates in the terms, conditions, or privileges of the rental of a dwelling because of race, in violation of the Fair Housing Act, 42 U.S.C. § 3604(b).

76. Plaintiffs are aggrieved persons as defined by 42 U.S.C. § 3602(i). Plaintiffs have been injured by Defendant's discriminatory conduct, and they have suffered damages as a result.

77. Accordingly, under 42 U.S.C. § 3613(c), Plaintiffs are entitled to actual damages, injunctive relief, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants as follows:

a. Declaring that Defendants' actions violate the Fair Housing Act;

b. Permanently enjoining Defendants from using, requiring, or enforcing preferences in the Town's affordable housing programs and in the Town's Zoning Code;

c. Enjoining Defendants to:

   i. Make all necessary modifications to their policies, practices and procedures to comply with fair housing laws, including amending the Town's Zoning Code to remove preferences for middle-income units;

   ii. Make all necessary modifications to ensure that all middle-income units are allocated based on the original date of application and not based on any other preference;

   iii. Train all Defendants' officials, personnel, and employees on fair housing laws;

   iv. Adopt and implement an affirmative marketing plan for the Town's middle-income units that prevents future housing discrimination;

   v. Modify any restrictive covenants that currently apply to middle-income units to remove any preferences; and

   vi. Remedy the unlawful discrimination caused by Defendants' actions and omissions.

d. Awarding damages to Plaintiffs;

e. Awarding reasonable attorneys' fees and costs under 42 U.S.C. § 3613(c); and

f.  Awarding such other and further relief as this Court may deem just and proper.

Dated: New York, New York
July 26, 2017

EMERY CELLI BRINCKERHOFF
& ABADY LLP

By: _____
Diane L. Houk
Zoe Salzman

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Plaintiffs*